**STATE of Missouri, Appellant,**

v.

**Harry Don FOSTER, Respondent.**

**No. SD 32181.**

Missouri Court of Appeals, Southern District, Division Two.

March 20, 2013.

Chris Koster, Atty. Gen., Timothy William Anderson, Asst. Atty. Gen., Jefferson City, for Appellant.

Daniel T. Moore & John Michael Albright, Poplar Bluff, for Respondent.

DANIEL E. SCOTT, P.J.

The state appeals from an order suppressing evidence, asserting two related theories for reversal. Neither is persuasive. We affirm the trial court's order.

### Background[1]

Officers James and Parsley were patrolling late at night, looking for drunk drivers. Up ahead, a car driven by Foster signaled and turned right. The officers followed. The car's left tires crossed the centerline twice in less than a mile. About the time that Foster signaled to turn into his driveway, Officer James activated his emergency lights.

Foster pulled into his attached garage and parked. As the door was closing, Officer Parsley got under it and into the garage, followed by Officer James. They had no warrant, no consent to enter, and did not suspect Foster of any felony.

The officers asked Foster to step outside. He refused, saying "We're staying in for the night. We're not going to go anywhere." Officer Parsley got Foster by the shoulder and took him outside "under the authority of the law" (according to Officer James) for a half-hour of observation and field sobriety tests. Only after that did the officers decide to arrest Foster for (1) DWI and (2) not driving on the right side of the road.[2]

The trial court granted Foster's motion to suppress all evidence obtained after the officers' warrantless entry.

### Principles of Review

■ The state's appeal is authorized by § 547.200.1(3). We view the record and reasonable inferences favorably to the ruling, disregarding contrary evidence and inferences. *Hamilton*, 227 S.W.3d at 515. The trial court was free to disbelieve any of the state's proof, even if uncontradicted. *Id.* If the decision was plausible on the whole record, we will not reverse even if we might have weighed the evidence differently. *Id.* Findings of fact were not made or requested, so we presume the

---

1. Despite bearing the burdens of proof and persuasion below (*State v. Hamilton*, 227 S.W.3d 514, 515 (Mo.App.2007)), the state called only one witness, adduced just four pages of direct testimony, and asked a single question on re-direct. We glean the facts from this thin record and state them consistently with our standard of review described *infra*.

2. *See* § 577.010 and § 304.015 respectively. Statutory citations herein are RSMo 2000.

trial court found the facts in accordance with its ruling. *Id.* We will affirm on any reasonable basis that the record supports. *Id.*

## Claims on Appeal

The state's points share, as their common denominator, a claim of exigent circumstances. Point I asserts that the officers entered Foster's home [3] with probable cause to arrest him for DWI *and* exigent circumstances justified a warrantless entry. Point II asserts that the officers had seen other traffic violations by Foster *and* exigent circumstances justified their entry. The latter point seems inconsistent with the state's position in the trial court:

> [TRIAL COURT]: I don't believe anybody is justified to go into a home to arrest somebody on a—on a crossing the center line alone. That wouldn't—That wouldn't—That wouldn't be enough. Does the State agree with that?

> [STATE'S ATTORNEY]: I agree with—We agree with that. Yes, Your Honor.

That said, since both points assert exigent circumstances, we turn first to that issue.

## Exigent Circumstances—*State v. Wren*

Given a surprising paucity of Missouri decisions, the parties primarily cite other states' cases. Having read those and many more,[4] we find most helpful, despite its different facts, the case of *State v.*

---

**3.** The state does not deny that Foster's home, for these purposes, included his attached garage.

**4.** *See, e.g.,* cases collected in Annot., *When Is Warrantless Entry of House or Other Building Justified Under "Hot Pursuit" Doctrine,* 17 A.L.R.6TH 327 (2006); and 1 E.L. Fiandach, *Litigation of Home Arrests,* HANDLING DRUNK DRIVING CASES § 6:8 (2012). *See also* 3 Wayne R. LaFave, SEARCH AND SEIZURE § 6.1(d) (2012); Thomas A. Clancy, THE FOURTH AMENDMENT § 10.6 (2008). Among Missouri cases, a fine

*Wren,* 115 Idaho 618, 768 P.2d 1351 (Idaho App.1989). Responding to a neighborhood complaint, officers told Wren, who was in his yard, to "quiet down" or be cited for peace disturbance. Wren replied abusively and went into his house. The officers pushed their way through the door, subdued Wren by force, arrested him inside his home, and found marijuana in his pocket. In reviewing Wren's unsuccessful motion to suppress, the appellate court addressed

> a narrow but important constitutional question. May police officers, in whose presence a nonviolent misdemeanor has occurred, pursue the alleged offender into his home and seize him there without an arrest warrant? We hold that they may not unless (a) the pursuit is triggered by flight from a lawful arrest outside the home, or (b) exigent circumstances, other than the pursuit itself, make it necessary to enter the home without a warrant.

*Id.* at 1352.

■ *Wren*'s persuasive analysis of Supreme Court precedent, which we will only summarize, builds from *Payton v. New York,*[5]

> [which] provides the general rule that a nonconsensual, warrantless arrest in the home violates the Fourth Amendment. The rule is narrowed by two exceptions. First, as noted in *Santana,* where an arrest begins in a public place, the sei-

---

survey of relevant law is offered in *State v. Cook,* 273 S.W.3d 562, 567–73 (Mo.App. 2008). Ultimately, however, *Cook* was decided on a ground not asserted here. *Id.* at 573–75.

**5.** 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Other key Supreme Court cases considered in *Wren* include *U.S. v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) and *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984).

zure may be completed within the home if the accused flees there in an attempt to evade the arrest.... The second exception, as set forth in *Santana* and *Welsh,* is that a warrantless seizure may be made in the home if exigent circumstances make it necessary to dispense with a warrant. As noted in *Welsh,* the government's burden of proving exigent circumstances for a warrantless arrest at home is especially heavy if the alleged offense is relatively minor.

*Wren,* 768 P.2d at 1355.

■■ Next, the *Wren* court considered "the exigent circumstances exception, and its relation to hot pursuit," and concluded after analysis that "hot pursuit, by itself, creates no necessity for dispensing with a warrant," and "a warrantless arrest within the home cannot be justified upon hot pursuit alone." *Id.* at 1356, 1358. Thus, it "join[ed] those courts which have held that a warrantless arrest in the home must be justified upon an exigent circumstance in addition to the pursuit." *Id.* at 1358.[6]

### Point II Fails

■ *Wren* and its cited Supreme Court cases support the state's concession, quoted above, that Foster's centerline violation did not justify this warrantless entry. Accordingly, we reject Point II.

### Point I Fails

Point I asserts that the officers had probable cause to arrest Foster for DWI when they entered his garage (and, as in Point II, that exigencies justified their entry). The probable cause prong fails for at least two reasons.

■ First, the state mixes two fundamentally different concepts in conceding that this is "not the strongest case for probable cause, or reasonable suspicion," and seems to incorrectly suggest that one is as good as the other for arrest purposes.[7]

■ Further, this probable cause theory rests upon a "study" that the state cites for the first time on appeal and describes *in toto* as follows:

The National Highway Traffic Safety Administration's study instructs that weaving at night—alone—shows a greater than 50% chance of being intoxicated, and weaving plus another clue—such as failure to stop upon signal from an officer—results in a greater than 65% chance of the driver being intoxicated.

This "study" was not offered into evidence below, and is outside the appellate record, so we cannot consider it.

These flaws doom a probable cause argument that, shorn of case citations, totals two sentences. This failure, in turn, is fatal to Point I as stated, so we need not reach the supporting arguments about hot pursuit or other alleged exigencies. Point denied.

---

**6.** Citing, *inter alia, Jeffcoat v. Hinson,* 851 F.2d 356 (4th Cir.1988); *People v. Day,* 165 Ill.App.3d 266, 116 Ill.Dec. 525, 519 N.E.2d 115 (1988); *People v. Klimek,* 101 Ill.App.3d 1, 56 Ill.Dec. 403, 427 N.E.2d 598 (1981); *People v. Strelow,* 96 Mich.App. 182, 292 N.W.2d 517 (1980); *State v. Bolte,* 225 N.J.Super. 335, 542 A.2d 494 (N.J.App.Div. 1988). The *Wren* court described its holding as "consistent with decisions upholding warrantless entries where hot pursuit has, in fact, been coupled with another exigent circumstance," such as *City of Kirksville v. Guffey,* 740 S.W.2d 227 (Mo.App.1987), a case cited by the state here. *Wren,* 768 P.2d at 1358. *Wren* dismissed, as "boilerplate recitals," Idaho cases that listed hot pursuit as an exception to the warrant requirement, but which also involved other exigencies. *Id.* at 1358 n. 7.

**7.** "Reasonable suspicion is a less stringent standard than probable cause." *State v. Woods,* 284 S.W.3d 630, 635 (Mo.App.2009).

## Conclusion

 Failure of the state's points ends our inquiry. Our review is limited to these claims of error; we do not consider whether the order may be vulnerable to other attacks. *O'Connor v. State Farm Mut. Auto. Ins. Co.*, 831 S.W.2d 748, 750 (Mo.App.1992); *Gover v. Empire Bank*, 574 S.W.2d 464, 468 (Mo.App.1978).[8]

We affirm the trial court's order and remand the case. *See State v. McNeely*, 358 S.W.3d 65, 75 (Mo. banc 2012).

JEFFREY W. BATES, J., and DON E. BURRELL, C.J., concur.

8. "A cardinal rule of appellate review is that the questions for decision are those stated in the points relied on...." *McCoo v. State*, 844 S.W.2d 565, 567 (Mo.App.1992).